# In the United States Court of Federal Claims

No. 23-1138C

(Filed: March 14, 2024)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

GLENN E. ROBINSON,

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Maryam N. Hadden*, New York, NY, for plaintiff.

    *Robert R. Kiepura*, Trial Attorney, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *William J. Grimaldi*, Assistant Director, for defendant. *Michelle Hirth*, Department of the Navy, of counsel

BRUGGINK, *Judge*.

## OPINION

    On July 21, 2024, plaintiff filed this claim against the United States for breach of a settlement agreement relating to plaintiff's employment at the Naval Postgraduate School ("NPS"). Pending is defendant's November 20, 2024, motion to dismiss under Rules of the Court of Federal Claims ("RCFC") 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim. The matter is fully briefed and we held oral argument on March 6, 2024. We need not reach defendant's 12(b)(6) arguments regarding plaintiff's alleged failure to state a claim because we lack jurisdiction—the contract on which plaintiff sues specifically disavows money damages as a remedy for breach.

1

BACKGROUND[1]

Plaintiff was employed by NPS as an associate professor specializing in defense analysis from 1991 to 2021. Compl. ¶ 20. In 2021, while plaintiff was seeking promotion to full professor, plaintiff faced an internal investigation and disciplinary suspension for a leave-related issue not relevant to this motion to dismiss. Compl. ¶ 26. Because of that disagreement, the parties entered into an agreement to settle remaining disputes relating to plaintiff's employment with NPS. Compl. ¶ 29. Paragraph 4 of the agreement sets out NPS's obligations:

> (a) Upon Robinson's full compliance with the obligations set forth in paragraph 5(a), (b), and (d)-(g) below, to grant Robinson's appeal of his non-selection for promotion to full Professor, and to promote Robinson to the rank of full Professor at the Naval Postgraduate School, with all rights, entitlements, and benefits due such rank. NPS shall effect the promotion no later than one (1) day prior to the effective date of Robinson's retirement from Federal service pursuant to paragraph 5(a) below.
> (b) To take all necessary actions to process Robinson's seventy (70)-day suspension so as to begin on Wednesday, 11 August 2021.

In exchange for these promised actions, plaintiff agreed to retire from NPS after the 70-day suspension. Compl. Ex. A ¶ 5. In paragraph 5 he also agreed, *inter alia*:

> (e) To accept the actions promised by NPS in Paragraph 4 as full, complete, and final settlement of the Disputes. Robinson understands and agrees that NPS's actions referenced in paragraph 4 above constitute the totality of NPS's obligations under the Agreement. Robinson further understands and agrees that NPS shall owe no lump sum direct payments or other monetary obligations to Robinson or any other person for any purpose, including without

---

[1] The facts, which we assume to be true for purposes of ruling on the motion, are drawn from plaintiff's complaint, including the attached settlement agreement.

2

> limitation attorney fees . . . and that the actions referenced in Paragraph 4 above are in lieu of any such payments.
> (f) To take all necessary actions to withdraw and dismiss, with prejudice, any causes of action, claims, appeals, petitions, or proceedings, whether judicial or administrative, . . . .
> (g) To release and forever discharge NPS from any and all action(s), cause(s) of action, sums of money, accounts, covenants, contracts, . . . damages, costs . . . , losses, losses of services, expenses, compensation . . . and demands whatsoever . . . against NPS . . . relating to, or arising from the underlying facts of the Disputes or his employment at NPS . . . .

In Paragraph 7, Robinson agreed that:

> . . . his sole remedy in the event of violation, breach, or failure to perform shall be specific performance by NPS of its obligations under this Agreement. If Robinson is not satisfied with NPS's attempts to resolve the matter, he may request that the dispute regarding alleged noncompliance be submitted NPS's Alternate Dispute Resolution (ADR) Program for resolution.

The agreement also contains language indicating that it constitutes "the complete understanding of the Parties. There exist no other oral or written agreements, understandings, or promises between the Parties." Compl. Ex. A ¶ 10.

The waivers under the agreement contained two carve-outs. It did not bar plaintiff's "administrative appeal of his non-selection to full Professor [and] his claims for reimbursement for lost wages and expenses incurred in returning from sabbatical." Compl. Ex. A ¶ 5(f). And the agreement states that "paragraph 5(g) shall not apply to Robinson's administrative appeal of his non-selection to full Professor nor to his claims for reimbursement for lost wages and expenses incurred in returning from sabbatical." Compl. Ex. A ¶ 5(g).

Following plaintiff's 70-day suspension and his promotion to full professor, he retired from NPS as agreed upon in the settlement agreement. Compl. ¶ 31. Thereafter, NPS terminated plaintiff's access to NPS facilities and deactivated his NPS email account. Compl. ¶ 33. NPS also denied

plaintiff's request that he be granted volunteer status and rejected his nomination by NPS faculty to emeritus status, two honors he alleges were routinely granted to retiring faculty. Compl. ¶ 36-40.

Convinced that NPS had breached its obligations, plaintiff initiated the ADR process contemplated by the agreement. Compl. ¶ 47. After the ADR process ended without agreement, NPS continued to deny plaintiff's requests for volunteer and emeritus status. Compl. ¶ 54.

## PROCEDURAL HISTORY

Plaintiff filed this action on July 21, 2023. In his complaint, plaintiff argues that NPS breached ¶4(a) of the settlement agreement by failing to treat him "with all rights, entitlements, and benefits due" a full professor. He specifically claims that, in the past, retired full professors have routinely been granted "emeritus" status along with continued use of government email and library access. He contends that these benefits, although not spelled out in the agreement, were so routine that they should be deemed included as "rights, entitlements, and benefits" under ¶4(a). He argues that such status and access confers financial benefit and that not affording them caused him monetary injury by decreasing his future earning potential.

Plaintiff also alleges that NPS refused to participate in the ADR process in good faith by failing to send an official with decision-making authority to participate in the ADR process and refusing to consider granting plaintiff volunteer or emeritus status. Compl. ¶ 52–53; Compl. ¶ 63. Plaintiff asks us to permanently enjoin defendant from breaching the settlement agreement, requests compensatory damages of no less than $10,000 for "pain, suffering, and humiliation" allegedly caused by NPS, and asks for punitive damages. Compl. ¶ 64. Plaintiff asserts that this court possesses jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).

Defendant argues that we lack jurisdiction over plaintiff's claim. Although the court routinely exercises Tucker Act jurisdiction over breach of contract claims, defendant argues that because the settlement agreement specifically disavows money damages the presumption of Tucker Act jurisdiction does not attach. In addition, it argues that even if there was a breach, the only remedy contemplated by the settlement agreement other than a referral to ADR was specific performance of the government's obligations, a species of injunctive relief which is also beyond the court's power.

Defendant also appends the agency procedures relevant to the "Honorary Title of Emeritus/Emerita," NPS INSTRUCTION 12900.1A (December 17, 2018). It relies on the instruction to show that emeritus title is "approved by the President on recommendation of the Provost." Mot. to Dismiss Attach. 1 at 1. Plaintiff's counsel conceded at oral argument that the Provost had not recommended that plaintiff receive the emeritus status, and that in any event, the President had not approved it.

In response, plaintiff recognizes that Paragraph 7 appears to foreswear any right to seek money damages for a breach. Nevertheless, his argument is that the carve outs preserved in Paragraph 5(f) and (g) preserving a right to administrative appeal of his non-selection to full Professor and "his claims for reimbursement for lost wages and expenses" creates an ambiguity about the reach of the waivers in the agreement. This leaves room, according to plaintiff, to construe broadly a full professor's "rights, entitlements and benefits" referred to in the settlement agreement, thereby obligating the agency to award emeritus status and access to email and the agency's library. Because of the asserted financial advantages of emeritus status, plaintiff argues that the "money mandating" nature of the agreement is confirmed.

At oral argument, plaintiff's counsel represented that that plaintiff's administrative appeal has been withdrawn and that there are no other live proceedings related to this case. She also confirmed that the only money claim being asserted is the contract claim for breach of the agreement. It is not based on some other administrative proceeding action or other contract. For the reasons set forth below, we reject plaintiff's construction of the agreement and grant defendant's motion to dismiss for lack of jurisdiction.

DISCUSSION

The Tucker Act grants this court jurisdiction over certain claims for money damages against the United States founded upon the United States Constitution, federal statutes, executive regulations, or contracts. 28 U.S.C. § 1491(a)(1); *United States v. Mitchell*, 463 U.S. 206, 215–18 (1983). While the Tucker Act "does not create any substantive right enforceable against the United States for money damages," *Mitchell*, 463 U.S. at 216, contracts with the government may serve as the basis of Tucker Act jurisdiction.

"[I]n the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement." *Sanders v. United States*, 252

5

F.3d 1329, 1334 (Fed. Cir. 2001). Therefore, "in a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). Breach of contract claims do not always satisfy the Tucker Act's money-mandating requirement, however. The Federal Circuit explained in *Holmes* that a "contract expressly disavowing money damages would not give rise to Tucker Act jurisdiction." *Id.*

Defendant points to ¶ 5(e), in which plaintiff agreed that "NPS shall owe no lump sum direct payments or other monetary obligations to Robinson or any other person for any purpose, including without limitation attorney fees or representative fees, and that the actions referenced in Paragraph 4 above are in lieu of any such payments." *Id.* This is also reinforced, in defendant's view, by Paragraph 7, where "Robinson . . . . agree[d] that his sole remedy in the event of violation, breach or failure to perform shall be specific performance by NPS of its obligations under this agreement." Compl. Ex. A ¶ 7. It is also arguably reinforced by ¶10, in which the parties agreed that there were no other obligations contemplated on the part of the agency than promotion to full professor, which indisputably occurred.

Under *Holmes*, these explicit disavowals of a monetary remedy would appear to preclude plaintiff's claim because they indicate that the parties categorically "did not intend for money damages to be available in the event of breach." *Holmes*, 657 F.3d at 1316. We believe that this language is so explicit and comprehensive that the presumption of the availability of money damages which normally attaches to any breach of contract is simply not available. Plaintiff's rather convoluted argument drawn from the waiver carve-outs in Paragraph 5(f) and (g) is too attenuated to be plausible.  We begin with the fact that plaintiff concedes that he does not rely on the language of the carve-outs themselves. He is not attempting to enforce a claim for wages resulting from a successful administrative appeal—counsel at oral argument said that that was not the basis of the current claim and that in any event those administrative actions were terminated.

Instead, plaintiff asks the court to draw an inference from the mere presence of the carve-outs to suggest that the reference in ¶4(a) to "rights, entitlements, and benefits" of full professorship should be interpreted to embrace benefits flowing from emeritus status, despite the fact that granting emeritus status is clearly discretionary in the President of NPS and was not mentioned in the agreement. What plaintiff does not—and we believe

6

cannot—argue is that the exclusions of Paragraph 5(f) and (g) in any way diminish the comprehensive bar of Paragraphs 5(e) and 7 with respect to seeking money damages for breach of the settlement agreement. Enforcement of those obligations is expressly limited in paragraph 7 to non-monetary relief, removing the contract from the jurisdiction of this court.

      As to injunctive relief, it is undisputed that the agency promoted plaintiff to full professor and initiated his suspension on the agreed-upon date. Plaintiff's assertions concerning the agency's failure to participate in good faith in the ADR proceeding sound in tort and do not fall within this court's jurisdiction. With respect to other relief sought, the government is also correct that plaintiff's requests for injunctive relief, punitive damages, damages for "pain, suffering, and humiliation," and a jury trial are not within the court's power to grant. Except for narrow circumstances not present here, the court may not afford injunctive relief. *See James v. Caldera*, 159 F.3d 573, 580-81 (Fed. Cir. 1998)); *Mients v. United States*, 50 Fed. Cl. 665, 673 (2001). A claim for damages over alleged pain, suffering, and humiliation sounds in tort—we plainly may not exercise jurisdiction over torts. 28 U.S.C. § 1491(a)(1); *Rojas-Vega v. United States*, 782 F. App'x 994, 996 (Fed. Cir. 2019). We likewise may not grant punitive damages. *Environmental Safety Consultants, Inc. v. United States*, 95 Fed. Cl. 77, 98 (2010) (citing 28 U.S.C. § 1491(a)). Finally, jury trials are not available in this court.

      We therefore grant defendant's motion to dismiss pursuant to RCFC 12(b)(1). The Clerk of Court is directed to enter final judgment dismissing the complaint without prejudice. No costs.

                                                  s/Eric G. Bruggink
                                                  ERIC G. BRUGGINK
                                                  Senior Judge